**Laura WILSON, Personal Representative of the Estate of Max Wilson, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–635C.

United States Court of Federal Claims.

Dec. 4, 2003.

---

Frank Mafrice, Southfield, MI, for plaintiff. Patrick Burkett, Sommers, Schwartz, Silver, & Schwartz, P.C., of counsel.

Richard S. Ewing, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

**ORDER**

MILLER, Judge.

This case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Plaintiff is the representative of a Medicare recipient's estate. The Medicare recipient received medical services that were covered and paid for by Medicare. After the estate settled a tort claim for medical malpractice, Medicare claimed entitlement to a portion of the settlement, which plaintiff duly paid. Plaintiff now seeks return of the money that she remitted to Medicare on the ground that it was demanded improperly, and therefore constitutes an illegal exaction under the applicable statutes, and deprived her of due process of law under the Fifth Amendment to the U.S. Constitution.

**FACTS**

The relevant undisputed facts derive from the complaint and are construed in a light most favorable to plaintiff. As personal representative to the estate of Max E. Wilson, Laura Wilson ("plaintiff") filed a medical malpractice claim against two doctors and a hospital concerning the care of Mr. Wilson, now deceased. Mr. Wilson was eligible for and did receive Medicare benefits for the

medical care that led to the malpractice claim.

Medicare, enacted in 1965, is a federally funded health insurance program for the aged, disabled, and persons suffering from a specified disease. *See* 42 U.S.C. §§ 1395–1396b (2000). While Medicare initially was the primary payer for covered care, after 1980 Congress began enacting statutes designed to stem the increasing costs of the program. *See* H.R.Rep. No. 96–1167 (1980), U.S.Code Cong. & Admin.News 1980, p. 5526. Medicare as Secondary Payer ("MSP") statutes require liability, automobile, and no-fault insurance to make primary payments for care, with Medicare acting as a secondary payer. *See* 42 U.S.C. § 1395y(b).

MSP provisions decrease Medicare payments through two mechanisms. First, MSP provisions prevent Medicare from making payments for covered medical care if payment already has been made or reasonably is expected to be made by another source. 42 U.S.C. § 1395y(b)(2)(A)(i). Thus, Medicare effectively is relieved from making payments when the medical care is covered under "workmen's compensation law or ... an automobile or liability insurance policy ... or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). Second, MSP provisions allow Medicare to make a payment under the first provision, but require Medicare to be repaid. 42 U.S.C. § 1395y(b)(2)(B)(i). Under this second provision, Medicare may make a payment for medical care that is covered by another health-care plan under 42 U.S.C. § 1395y(b)(2)(A), but Medicare must be reimbursed when the primary insurer makes payments for the medical care. Medical care thus is secured for a Medicare-eligible person whose care is covered by an insurer that should be the primary payer, but has not resolved the claim timely enough to pay for the medical care at the time payment is due. When such an event occurs, Medicare may pay for the care, and the MSP statutes obligate the other insurer, once payment for the care is approved, to reimburse Medicare.

The defendants in the medical malpractice suit settled plaintiff's claim on May 13, 2002. The Department of Health and Human Services ("HHS") determined that Medicare made $147,057.38 in conditional payments for the care of Mr. Wilson. By letter dated June 30, 2002, Medicare claimed a "lien" on the settlement and sought recovery of $88,-744.72[1] from plaintiff for payments made by Medicare for Mr. Wilson. HHS took the position that the MSP provisions require plaintiff to repay Medicare proceeds from the malpractice settlement. Plaintiff agreed to settle Medicare's claim for reimbursement on November 5, 2002, by repaying $48,277.33.

Plaintiff filed this suit to recover the $48,277.33 payment made to Medicare, alleging that no overpayment existed and that the Government was not entitled, under the MSP provisions, to a share of the settlement from the malpractice claim.[2]

## DISCUSSION

### 1. *Standard of review*

Defendant moves to dismiss plaintiff's complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction. The burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it, *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir. 2002), as federal courts are presumed to lack jurisdiction unless the record affirmatively indicates to the contrary, *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether

---

1. Medicare made payments for Mr. Wilson's care of approximately $126,000.00 under Medicare Part A and $21,000.00 under Part B. In seeking reimbursement, Medicare discounted the total of payments by the estimated costs of plaintiff's attorneys' fees and expenses in pursuing the malpractice claim, resulting in the $88,744.72 sought by Medicare.

2. Plaintiff's complaint recites that she also is suing on behalf of a class. The court deferred its determination pursuant to RCFC 23(c) as to whether the class action is to be maintained pending a ruling on defendant's motion to dismiss. *Wilson v. United States*, No. 03–635C (Fed. Cl. Aug.21, 2003) (order).

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

The court must accept as true the facts alleged in the complaint, *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader, *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (holding courts obligated "to draw all reasonable inferences in plaintiff's favor"). However, the court may consider all relevant evidence, including evidentiary matters outside the pleadings, when resolving a jurisdictional challenge. *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985).

### 2. *Jurisdiction*

Plaintiff's complaint grounds subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), which authorizes the Court of Federal Claims to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The Tucker Act enables the Court of Federal Claims to hear actions pursuant to contracts with the United States; illegal exactions of money by the United States; and money-mandating constitutional provisions, statutes, regulations, or executive orders. *See United States v. Mitchell*, 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed.Cir.2003) (en banc). The Tucker Act itself does not provide a substantive cause of action; rather, a plaintiff must cite elsewhere to a substantive cause of action in order to proceed. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Collins v. United States*, 67 F.3d 284, 286 (Fed.Cir.1995). The Court of Federal Claims would lack jurisdiction if plaintiff failed to exhaust an administrative remedy provided by statute. *See Heckler v. Ringer*, 466 U.S. 602, 627, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (holding administrative remedies must be exhausted before seeking judicial review under Medicare Act).

Plaintiff asserts that the $48,277.33 payment made to Medicare constituted an illegal exaction under the MSP laws and a violation of her right to due process under the Fifth Amendment to the U.S. Constitution. Defendant makes three contentions to establish a bar to jurisdiction. First, plaintiff's claim arises under the Medicare Act, which provides for administrative and judicial remedies that impliedly preempt Tucker Act jurisdiction. Second, the Medicare Act explicitly requires that plaintiff's claim be brought in federal district court. Third, plaintiff did not submit her claim to HHS, thereby failing to exhaust her administrative remedies.

### 1) *Whether the Medicare Act impliedly preempts the jurisdiction of the Court of Federal Claims*

Defendant argues that the Medicare Act provides comprehensive administrative and district court review procedures in 42 U.S.C. § 1395ii, thus preempting Tucker Act jurisdiction. "Courts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum." *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 550 (Fed.Cir. 1994). The parties dispute whether another forum is available to hear plaintiff's claim.

The Federal Circuit held in *St. Vincent's* that the Court of Federal Claims lacked Tucker Act jurisdiction over a medical care provider's claim for retroactive repayment of Medicare reimbursement. Plaintiff, a medical care provider, learned about certain costs of providing medical care after it had filed for reimbursement from Medicare. In an attempt to recoup these expenses, the provider filed a request for repayment with the appropriate reviewing agency, which denied the request. The provider then filed three appeals of the administrative agency decision with the Provider Reimbursement Review Board ("PRRB"), pursuant to 42 U.S.C. § 1395oo. Prior to a decision by the PRRB, plaintiff filed an action in the Court of Federal Claims.

The claimant in *St. Vincent's* sought additional money from Medicare for patient care costs, unlike plaintiff in the case at bar, who represents a Medicare patient seeking the return of money that she claims Medicare improperly demanded. In addition to being in a different factual position, plaintiff in this case is in a different legal position.

42 U.S.C. § 1395oo provides for an administrative remedy for medical care providers, like plaintiff in *St. Vincent's*. The Federal Circuit explained: "Only where Congress has not specified procedures for review of Medicare reimbursement claims can those claims be entertained under the Tucker Act." 32 F.3d at 550. Without a specified procedure for review of a claim, jurisdiction may lie within the Tucker Act. The crucial issue is whether an administrative remedy, as existed in *St. Vincent's*, is available for plaintiff in the case at bar.

### 2) *Whether exclusive jurisdiction over plaintiff's claim lies in federal district court*

Because federal district courts are vested with the power of sole judicial review, defendant argues that an administrative review procedure is available to plaintiff. 42 U.S.C. § 1395ii incorporates into the Medicare Act 42 U.S.C. § 405(h) of the Social Security Act, which provides that HHS decisions are binding: "No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h). Section 405(h) prevents district courts from hearing claims arising under the Medicare Act under federal question jurisdiction, 28 U.S.C. § 1331, or under the Little Tucker Act, 28 U.S.C. § 1346.[3] Court of Federal Claims jurisdiction is not mentioned in 42 U.S.C. § 405.

Section 405(g) of the Social Security Act sets the parameters of judicial review in federal district court and stipulates that the subject of review arises "after any final decision of the Commissioner of Social Security." The Supreme Court has held that 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, "provides that section 405(g) ... is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (denying district court jurisdiction over Medicare recipients' reimbursement claims for medical services received when administrative remedies not exhausted); *see Weinberger v. Salfi*, 422 U.S. 749, 761, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding section 405(h) precludes federal question jurisdiction of constitutional claims). Thus, federal district courts may hear claims "arising under the Medicare Act" by reviewing administrative decisions, but not through federal question or Little Tucker Act jurisdiction.

In *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000), a group of service providers filed suit in federal district court claiming that certain Medicare health and safety regulations violated statutes and the Constitution. In holding that the Medicare Act barred federal question jurisdiction, 28 U.S.C. § 1331, the Supreme Court construed 42 U.S.C. § 405(b) to provide an administrative hearing for providers and section 405(g) to provide for review of a decision in district court, which section 405(h) made the exclusive method of judicial review. *Id.* at 10, 120 S.Ct. 1084. The Supreme Court applied the bar to a challenge to the application of a rule or regulation on legal grounds. The Court reasoned that such a challenge is tantamount to an action to recover on any claim arising under the Social Security or Medicare Acts. The Court then ruled that section 405(h) is not limited to amount determinations. *Id.* at 16–17, 120 S.Ct. 1084.

This guidance provided by the Supreme Court establishes that a federal district court may not exercise jurisdiction over a provid-

---

**3.** The Tucker Act, 28 U.S.C. § 1491(a)(1), grants the Court of Federal Claims jurisdiction over claims for money damages against the United States not sounding in tort; the Little Tucker Act,

28 U.S.C. § 1346(a)(2), grants district courts concurrent jurisdiction over claims against the United States for less than $10,000.00.

er's claims for reimbursement unless the court is reviewing an administrative determination. However, this is not instructive on the issue of whether the Court of Federal Claims may hear a claim on behalf of a Medicare recipient that Medicare made an improper demand of money. A significant difference is present between a plaintiff who is seeking reimbursement from HHS and one who is seeking return of money exacted by HHS.

Because the precise jurisdictional issue presented has not been analyzed by the Supreme Court or the Court of Appeals for the Federal Circuit, this court considers the law of other circuits. The Fifth Circuit has held that the Government may not sue Medicare beneficiaries in district court to recover tort settlements under the MSP provisions. *Thompson v. Goetzmann*, 337 F.3d 489, 500 (5th Cir.2003). In *Goetzmann* the Government brought suit under the MSP provisions against the lawyers for a Medicare beneficiary who had entered into a tort claim settlement regarding defective medical products. The Fifth Circuit held that the MSP provisions do not give Medicare the right to demand reimbursement from beneficiaries who settle tort claims, because such payments are not made by an "insurer." *Id.* at 499.

In *Mason v. American Tobacco Co.*, 346 F.3d 36 (2d Cir.2003), the Second Circuit specifically analyzed the definition of insurer under the MSP provisions. Plaintiffs in *Mason* sought to utilize the MSP provisions to recover Medicare costs from major tobacco producers. The appeals court remarked that the action carried "a terrific amount of precedential baggage," because the Government already unsuccessfully had tried to use the MSP provisions to assert claims against tort settlements. *Id.* at 39; *see Thompson v. Goetzmann*, No. 3:00–CV–2174–M, 2001 WL 771012, 2001 U.S. Dist. LEXIS 9258 (N.D.Tex. July 3, 2001) (dismissing Government's claim to proceeds from an individual tort action), *aff'd, Goetzmann*, 337 F.3d at 493; *Orthopedic Bone Screw Prods. Liab.*, 202 F.R.D. 154 (E.D.Pa.2001) (granting injunction against Government's claim to mass tort settlement fund).

MSP statutes allow Medicare to be reimbursed whenever a " 'primary payer' has wrongfully failed to provide healthcare coverage to an individual pursuant to a 'primary plan.' " *Mason*, 346 F.3d at 39. Plaintiffs argued that corporations, which can afford to bear the risk of their potential liabilities, are self-insured and should be held liable under the MSP provisions. In deciding that the tobacco producers are not self-insured, the Second Circuit distinguished *United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003), in which the bankruptcy estate of the silicone breast implants manufacturer was found to be self-insured and liable under the MSP provisions.

In *Baxter* the alleged tortfeasor established a settlement fund dedicated to pay for the covered medical care of plaintiff's class members—an action which made it a primary payer of covered medical care expenses for the more than 400,000 women who registered as potential claimants. 345 F.3d at 873–74. That is distinct from the situation in *Mason* where the alleged tortfeasors "have yet to assume the medical costs of any identifiable group of individuals," but instead have simply "set aside funds to cover possible future liabilities." *Mason*, 346 F.3d at 42. Given these facts, it is not surprising that " 'the [MSP] statute has apparently never been successfully used to pursue a non-insurance entity.' " *Id.* (quoting *United States v. Philip Morris, Inc.*, 156 F.Supp.2d 1, 5 (D.D.C. 2001)).

With the exception of the factual circumstances present in *Baxter*, courts have rejected all efforts to apply the MSP statute in the context of tort litigation. *Mason*, 346 F.3d at 42 (citing *Diet Drugs Prod. Liab.*, No. 99–20593, 2001 WL 34133952, 2001 U.S. Dist. LEXIS 2959, at *39 (E.D.Pa. Mar. 21, 2001) ("MSP cause of action arises when the 'primary plan' is obligated to pay for the primary care at issue under a contract of insurance, not when the payment obligation arises out of tort litigation.")). Unfortunately, the failure of courts to accept the Government's expansive reading of the MSP statutes has not deterred the Government from continuing to use the rejected interpretation of the MSP statutes to pursue tort settlement bene-

ficiaries in its zeal to stem Medicare's hemorrhaging finances.

The Third Circuit in *Fanning v. United States,* 346 F.3d 386 (3d Cir.2003), dealt with a similar factual situation in reversing a district court that had enjoined Medicare from seeking reimbursement from beneficiaries who received tort claim settlements. In *Fanning* a class of Medicare recipients received a tort claim settlement from a medical product manufacturer. After the settlement the Government sent letters to class members demanding that they repay Medicare for benefits received and threatening to compound the debt by 13.75% a year and deduct it from other federal benefits (including Medicare and Social Security payments), unless paid within 60 days. The district court entered a preliminary injunction barring the Government from seeking reimbursement against the class, finding that 42 U.S.C. § 405(h) did not apply because the class was not seeking to recover Medicare benefits; rather, the class was attempting to enjoin the Government from collecting benefits that Medicare already had paid.

While the appeals court found the Government's letters were "more suggestive of tactics one might attribute to a less than reputable collection agency rather than to one's own government," the letters also informed the class of their administrative remedy. *Id.* at 402. Reversing the district court, the Third Circuit held that an administrative review was available to the class. *Id.* at 400, 402.

The Secretary of HHS may review the decision to seek reimbursement and shall waive recovery when the beneficiary "is without fault," "recovery[ ] would defeat the purposes of [the Medicare Act]," or "would be against equity and good conscience." 42 U.S.C. § 1395gg(c). Consequently, a decision by the Secretary would be subject to administrative and judicial review under 43 U.S.C. § 1395ff(b)(1). Although district courts would be able to review such a determination through 42 U.S.C. § 405(g), they are unable to hear a claim based on federal question jurisdiction. *See* 42 U.S.C. § 405(h).

*Fanning* is factually analogous to plaintiff's claim, although it is procedurally distinct. Plaintiff is seeking relief in the Court of Federal Claims, not a district court with federal question jurisdiction limited by 42 U.S.C. § 405(h) and 42 U.S.C. § 1395ii. Although Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1), is not precluded by 42 U.S.C. § 405(h), the administrative review procedure provided by 42 U.S.C. § 1395gg is available to plaintiff. Likewise, administrative review of plaintiff's claim still is subject to judicial review; however, section 405(g) vests exercise of that function in the district courts, not in the Court of Federal Claims. The Supreme Court repeatedly has upheld the exclusivity of this procedure and its predicate nature for judicial review of any claim relating to a Medicare benefit determination. Federal district courts have held that a claim such as plaintiff's is a claim involving a Medicare benefit determination. *See Maresh v. Thompson,* 290 F.Supp.2d 737, 739, 2003 U.S. Dist. LEXIS 19673, at *4 (N.D.Tex. Nov. 3, 2003); *Baughan v. Thompson,* No. 3:02CV00111, 2003 WL 22295354, at *2, 2003 U.S. Dist. LEXIS 17753, at *5 (W.D.Va. Sept. 30, 2003). Even though plaintiff seeks neither a "benefit determination nor a review of benefit determinations," the Medicare Act provides "both the standing and the substantive basis" for the claims making it one which arises under the Medicare Act, and is covered by 42 U.S.C. § 405(h). *Fanning,* 346 F.3d at 401.

### 3) *Whether plaintiff has failed to exhaust her administrative remedies*

42 U.S.C. § 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [she] was a party ... may obtain review of such decision by a civil action commenced within sixty days after the mailing ... of notice of such decision." The parties agree that plaintiff has not sought administrative review, which plaintiff argues is not available for this claim.

"On its face § 405(g) thus bars judicial review of any denial of a claim of disability benefits until after a 'final decision' by the Secretary after a 'hearing.'" *Mathews v.*

*Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The requirement of administrative review may be waived in certain circumstances, but the Supreme Court has held that "Congress, in both the Social Security Act and the Medicare Act, insisted upon an initial presentation of the matter to the agency." *Illinois Council,* 529 U.S. at 20, 120 S.Ct. 1084. Because the presentment requirement under the Medicare Act is not waivable, plaintiff's claim would be barred by a failure to present it to the agency.

Administrative review under the Medicare Act is prescribed under 42 U.S.C. § 1395ff(b), which provides for review of initial determinations. Reviewable initial determinations include "whether an individual is entitled to benefits," "the amount of benefits available," and "any other initial determination with respect to a claim for benefits." 42 U.S.C. § 1395ff(a). The parties agree that Mr. Wilson was entitled to benefits and that Medicare paid the proper amount when Mr. Wilson received covered medical care.

Plaintiff disputes that this claim is covered by section 1395ff; instead, plaintiff argues that HHS "swooped in upon Plaintiff, at the point of settlement of separate, tort litigation against a third party, and made a demand for repayment which has no support in the Medicare Act." Pl.'s Br. filed Aug. 19, 2003, at 12. However, by not first seeking a waiver from the Secretary or review of the agency decision, plaintiff has failed to comply with the procedures set forth in the Medicare Act. It is only through these administrative procedures that plaintiff may seek judicial review under 42 U.S.C. § 405(g), and only in federal district court.

Although plaintiff is correct that courts have criticized both Medicare's desperate attempts to recoup payment by reading the statute to cover payment by alleged tortfeasors, as well as the unseemly collection of practices of the Government, Congress precluded jurisdiction in the Court of Federal Claims by committing administrative review to the district courts.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion is granted, and the Clerk of the Court shall dismiss plaintiff's complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**